J-A11028-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JOSHUA LYNCH | |
| Appellant | No. 673 EDA 2015 |

Appeal from the Judgment of Sentence February 9, 2015
In the Court of Common Pleas of Bucks County
Criminal Division at No(s): CP-09-CR-0006446-2013

BEFORE:  SHOGAN, J., MUNDY, J., and FITZGERALD, J.[*]

MEMORANDUM BY MUNDY, J.:                **FILED June 24, 2016**

Appellant, Joshua Lynch, appeals from the February 9, 2015 judgment of sentence of 11½ to 23 months' incarceration, imposed by the trial court after a jury convicted Appellant of delivery of a controlled substance.[1]  After careful review, we affirm on the basis of the trial court's thorough and well-reasoned opinion.

For context, we recite the factual background as stated by the trial court as follows.

> On July 31, 2013, Bristol Township Police Officer Dennis Leighton began conducting an investigation using a confidential informant

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 35 P.S. § 780-113(a)(30).

codenamed "Tin Man." Officer Leighton, accompanied by Detective Sean Harold of Warminster Township, met with Tin Man at a predetermined meet location within Bucks County. Officer Leighton searched Tin Man's person and his clothing as Detective Harold searched his vehicle. No contraband was discovered as a result of either search. After conducting the search, the Officer and Detective observed Tin Man place a phone call to a number that he provided the Officers. Officer Leighton witnessed the call, and could hear a male voice on the other end of the phone speaking with Tin Man.

Based on the information received from [Tin Man], Officer Leighton contacted other officers to set up a surveillance detail, and he further obtained two hundred ($200) dollars in pre-recorded buy money. Officer Leighton arranged for Officers O'Brien and Phillips to be present in specific locations within Foxwood Manor Apartment Complex in a parking lot closest to the Veterans Highway entrance, with the expected target driving a silver Toyota Camry. Officer Leighton, Detective Harold, and Tin Man then proceeded to Foxwood Manor Apartments, traveling in separate vehicles. While [Tin Man] was driving to the complex, he was within sight of an officer at all times.

As a silver Toyota Camry entered the parking lot, Officer Phillips could clearly view Appellant as the driver and sole occupant of the vehicle. Officer Phillips was able to photograph the Camry bearing Pennsylvania registration JCF-2006. When Tin Man arrived a short time after, he pulled into a parking spot alongside of the silver Toyota Camry driven by Appellant. There were no other vehicles in that row of parking spots. [Tin Man] then exited his vehicle and entered the passenger side door of the Camry, staying in the car for approximately two minutes. Upon leaving the car, Tin Man re-entered his own vehicle and proceeded to leave the apartment complex.

Moments after, Officer O'Brien, who was positioned in a restaurant parking lot across Veterans Highway, observed Appellant operating the same silver Toyota Camry and talking on his phone as he left the complex and passed the restaurant. Officer O'Brien was later able to make an identification of Appellant at a closer distance as Appellant drove past a Wawa convenience store where the Officer was present. Additionally, Officer Phillips proceeded to follow the Camry southbound down Veterans Highway as it initially left the apartment complex, whereupon he pulled alongside of the Camry at a stoplight and was then able to again make a positive identification of Appellant as the driver and sole occupant of the vehicle.

After [Tin Man] ceased contact with [Appellant] in the silver Camry, he began to leave the parking lot himself, followed by Officer Leighton in his own vehicle. As the Camry turned southbound onto Veterans Highway, Tin Man left his vehicle, walked back to Officer Leighton's car directly behind his own, and provided the Officer with three (3) plastic bags that contained crack cocaine. After Tin Man gave the bags to Officer Leighton, Officer Leighton followed [Tin Man] back to the original predetermined meet location. Immediately after arriving back at the location, Officer Leighton conducted a thorough search of Tin Man's person and clothing, while Detective Harold again searched his vehicle. No currency or contraband were discovered during these searches. [Tin Man] was never out of sight of law enforcement at any time during this investigation and did not contact any individual other than [Appellant] or the Officers.

The Officers traced the registration of the Camry to a residence at 605 Winder Drive in Bristol, PA. Based on this information, Officers Leighton, Durle, O'Brien, and Phillips attempted to effectuate an arrest warrant on Appellant at that location two (2) days later on August 2, 2015. The Officers located the Camry and began surveillance of the

property in undercover vehicles, waiting for Appellant to enter the vehicle and become mobile.

Once Appellant entered the vehicle and began driving, the Officers attempted to effectuate a traffic stop of the Camry. At a red light, Officer Phillips pulled in front of Appellant's vehicle, while Officers Durle and O'Brien pulled behind Appellant and activated their red and blue emergency lights. Officer Phillips, wearing his badge around his neck and a ballistic vest with the word "Police" written in large white lettering along the front, exited his vehicle. The Officer instructed [Appellant] to stop his vehicle and place it in park, while Officer Durle exited the passenger side of his vehicle and attempted to effectuate the arrest.

As the Officers attempted to arrest Appellant, Appellant "put his car in reverse, backed up, made a right, and jumped the curb, drove down the sidewalk and then around [Officer Phillips'] vehicle and back on the roadway. Officer O'Brien proceeded to follow Appellant for approximately four (4) blocks, keeping his emergency lights activated and engaging his siren. Appellant then made a turn such that he was driving against the flow of traffic down a one-way street, whereupon Officer O'Brien discontinued the pursuit due to safety concerns.

Trial Court Opinion, 7/1/15, at 1-4 (citations to notes of testimony omitted).

Ultimately, Appellant was arrested and charged with delivery of a controlled substance and criminal use of a communications facility. A jury trial was held on February 3-4, 2015, after which the jury found Appellant guilty of delivery of a controlled substance, and not guilty of criminal use of a communications facility. On February 9, 2015, the trial court sentenced

J-A11028-16

Appellant to 11½ to 23 months' incarceration.  Appellant filed this appeal on

March 6, 2015.[2]

On appeal, Appellant presents six issues for our review.

> [1.] The evidence was insufficient to convict Appellant of the drug charge when the sole witness to the alleged buy did not testify, violating Appellant's Sixth Amendment constitutional right of confrontation.
>
> [2.] The [trial] court erred and abused its discretion by denying the motion to identify the confidential informant and his criminal history when the confidential informant was the one who allegedly purchased the drugs and there were no witnesses to the claimed buy.
>
> [3.] The [trial] court erred in failing to conduct an in-camera review of the confidential informant to determine there was, in fact, a confidential informant who made the July 31, 2013 drug purchase.
>
> [4.] The [trial] court erred in refusing to give a missing witness an adverse witness instruction regarding the confidential informant's failure to testify.
>
> [5.] The [trial] court erred in allowing testimony regarding the subsequent crime of "eluding police," when this testimony was not relevant, was more prejudicial than probative, and the evidence [was] insufficient to prove consciousness of guilt.
>
> [6.] The effective assistance of counsel claim, denying due process, should be decided on direct

---

[2] Appellant and the trial court have complied with Pennsylvania Rule of Appellate Procedure 1925.

- 5 -

> appeal when the sentence is short, the ineffectiveness claim obvious from the record, when the Appellant is willing to waive collateral review, and the ineffectiveness claim [is] ineligible for collateral review once Appellant has served his sentence.

Appellant's Brief at i-ii.

Upon review of the parties' briefs, the certified record and pertinent legal authority, we conclude that the Honorable Wallace H. Bateman, Jr., sitting as the trial court, has appropriately and comprehensively addressed the issues raised by Appellant in this appeal, citing the appellate standard of review, relevant facts of record, and prevailing case law, such that further commentary by this Court would be redundant. Accordingly, we adopt Judge Bateman's July 1, 2015 opinion as our own in affirming the February 9, 2015 judgment of sentence.[3]

Judgment of sentence affirmed.

---

[3] We note that Appellant raised a multitude of issues in his 11 page Rule 1925(b) statement, but abandoned several of those issues, including evidentiary and suppression issues, in his brief on appeal. Therefore, we express no opinion on the portions of the trial court's July 1, 2015 opinion addressing the issues abandoned by Appellant on appeal.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>6/24/2016</u>

IN THE COURT OF COMMON PLEAS OF BUCKS COUNTY, PENNSYLVANIA
CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA  :  CP-09-CR-0006446-2013
                          :
       v.                       :
                          :
JOSHUA LYNCH                :
                          :

## OPINION

Defendant Joshua Lynch (hereinafter "Appellant") appeals this Court's February 9, 2015 Judgment of Sentence and March 20, 2015 Denial of Motion to Reconsider Sentence. We file this Opinion pursuant to Pennsylvania Rule of Appellate Procedure 1925(a).

## PROCEDURAL HISTORY

On August 2, 2013, Bristol Township Police arrested and charged Appellant with Delivery of Controlled Substances[1] and Criminal Use of a Communications Facility[2]. Appellant's trial was held between February 3, 2015 and February 4, 2015, after which, a jury returned a verdict convicting Appellant of the Delivery of Controlled Substances charge. Appellant was found not guilty of Criminal Use of a Communications Facility.

On February 9, 2015, Appellant was sentenced to serve not less than eleven and one half (11 1/2), nor more than twenty-three (23), months in the Bucks County Correctional Facility. Appellant timely filed an appeal to the Superior Court on March 6, 2015.

## FACTUAL BACKGROUND

On July 31, 2013, Bristol Township Police Officer Dennis Leighton began conducting an investigation using a confidential informant codenamed "Tin Man." N.T. 02/03/15, pp. 20-21,

---

[1] 35 Pa.C.S.A. § 780-113(a)(30).
[2] 18 Pa.C.S.A. § 7512(a).

1

31. Officer Leighton, accompanied by Detective Sean Harold of Warminster Township, met with Tin Man at a predetermined meet location within Bucks County. Officer Leighton searched Tin Man's person and his clothing as Detective Harold searched his vehicle. No contraband was discovered as a result of either search. N.T. 02/04/15, pp. 12-17; 89-90. After conducting the search, the Officer and Detective observed Tin Man place a phone call to a number that he provided the Officers. Officer Leighton witnessed the call, and could hear a male voice on the other end of the phone speaking with Tin Man. N.T. 02/04/15, pp. 18-20.

Based on the information received from the Confidential Informant, Officer Leighton contacted other officers to set up a surveillance detail, and he further obtained two hundred dollars ($200) in pre-recorded buy money. N.T. 02/04/15, pp. 20-21. Officer Leighton arranged for Officers O'Brien and Phillips to be present in specific locations within Foxwood Manor Apartment Complex in a parking lot closest to the Veterans Highway entrance, with the expected target driving a silver Toyota Camry. N.T. 02/04/15, pp. 25-26, 115. Officer Leighton, Detective Harold, and Tin Man then proceeded to Foxwood Manor Apartments, traveling in separate vehicles. N.T. 02/04/15, p. 27. While the Informant was driving to the complex, he was within sight of an officer at all times. N.T. 02/04/15, p. 91

As a silver Toyota Camry entered the parking lot, Officer Phillips could clearly view Appellant as the driver and sole occupant of the vehicle. Officer Phillips was able to photograph the Camry bearing Pennsylvania registration JCF-2006. See Exhibit C-5; N.T. 02/04/15, pp. 117-19. When Tin Man arrived a short time after, he pulled into a parking spot alongside of the silver Camry driven by Appellant. There were no other vehicles in that row of parking spots. N.T. 02/04/15, pp. 29-30, 125. The Informant then exited his vehicle and entered the passenger side door of the Camry, staying in the car for approximately two minutes. Upon leaving the car, Tin

2

*JO*

Man re-entered his own vehicle and proceeded to leave the apartment complex. N.T. 02/04/15, pp. 125-26.

Moments after, Officer O'Brien, who was positioned in a restaurant parking lot across Veterans Highway, observed Appellant operating the same silver Toyota Camry and talking on his phone as he left the complex and passed the restaurant. N.T. 02/04/15, pp. 170-74. Officer O'Brien was later able to make an identification of Appellant at a closer distance as Appellant drove past a Wawa convenience store were the Officer was present. N.T. 02/04/15, pp. 176-77. Additionally, Officer Phillips proceeded to follow the Camry southbound down Veterans Highway as it initially left the apartment complex, whereupon he pulled alongside of the Camry at a stoplight and was then able to again make a positive identification of Appellant as the driver and sole occupant of the vehicle. N.T. 02/04/15, p. 128.

After the Informant ceased contact with the individual in the silver Camry, he began to leave the parking lot himself, followed by Officer Leighton in his own vehicle. As the Camry turned southbound onto Veterans Highway, Tin Man left his vehicle, walked back to Officer Leighton's car directly behind his own, and provided the Officer with three (3) plastic bags that contained crack cocaine. N.T. 02/04/15, pp. 31-32. After Tin Man gave the bags to Officer Leighton, Officer Leighton followed the Informant back to the original predetermined meet location. Immediately after arriving back at the location, Officer Leighton conducted a thorough search of Tin Man's person and clothing, while Detective Harold again searched his vehicle. No currency or contraband were discovered during these searches. N.T. 02/04/15, pp. 34-35, 96. The Informant was never out of sight of law enforcement at any time during this investigation and did not contact any individual other than the person in the Camry or the Officers. N.T. 02/04/15, pp. 95-96.

3

$\mathcal{J}1$

The Officers traced the registration of the Camry to a residence at 605 Winder Drive in Bristol, PA. Based on this information, Officers Leighton, Durle, O'Brien, and Phillips attempted to effectuate an arrest warrant on Appellant at that location two (2) days later on August 2, 2015. N.T. 02/04/15, pp. 49-50. The Officers located the Camry and began surveillance of the property in undercover vehicles, waiting for Appellant to enter the vehicle and become mobile. N.T. 02/04/15, p. 132.

Once Appellant entered the vehicle and began driving, the Officers attempted to effectuate a traffic stop of the Camry. N.T. 02/04/15, p. 132. At a red light, Officer Phillips pulled in front of Appellant's vehicle, while Officers Durle and O'Brien pulled behind Appellant and activated their red and blue emergency lights. Officer Phillips, wearing his badge around his neck and a ballistic vest with the word "Police" written in large white lettering along the front, exited his vehicle. The Officer instructed the driver to stop his vehicle and place it in park, while Officer Durle exited the passenger side of his vehicle and attempted to effectuate the arrest. N.T. 02/04/15, pp. 133-34.

As the Officers attempted to arrest Appellant, Appellant "put his car in reverse, backed up, made a right, and jumped the curb, drove down the sidewalk and then around [Officer Phillips'] vehicle and back onto the roadway." N.T. 02/04/15, p. 136. Officer O'Brien proceeded to follow Appellant for approximately four (4) blocks, keeping his emergency lights activated and engaging his siren. Appellant then made a turn such that he was driving against the flow of traffic down a one-way street, whereupon Officer O'Brien discontinued the pursuit due to safety concerns. N.T. 02/04/15, pp. 181-83.

4

Based upon the above evidence, the jury returned a guilty verdict on the charge of Delivery of a Controlled Substance. The jury found Appellant not guilty of Criminal Use of a Communications Facility.

## STATEMENT OF MATTERS COMPLAINED OF ON APPEAL

On March 18, 2015, this Court issued a 1925(b) Order directing Appellant to file a Concise Statement of Matters Complained of on Appeal within twenty-one days. Appellant filed such a Statement on June 5, 2015, which raised the following issues, *verbatim*:

1.      The Lower Court erred and abused its discretion in denying appellant's motion to provide the identity of the Confidential Informant, since this information was relevant, material, and in the interest of justice, and without which information appellant was unable to present a defense to the accusation that appellant violated 35-§780-113 §§A30 by delivering crack cocaine to the Confidential Informant. At the very least, the Lower Court should have conducted an in-camera [sic] examination of the Confidential Informant to determine if a Confidential Informant actually existed and determine whether the Confidential Informant confirmed that on July 31, 2013 he received crack cocaine from appellant in exchange for the $200.00 marked money.
Under the Pennsylvania Rule of Criminal Procedure 573, a trial court has the discretion to require the Commonwealth to reveal the names and addresses of all eyewitnesses, including confidential informants, where defendant makes a showing of material need and reasonableness, as appellant has done in this matter.
The circumstances of this case reveal that it was the Confidential Informant to whom appellant was alleged to have delivered the crack cocaine, and not an undercover police officer; [sic] that the Confidential Informant was the individual who allegedly had appellant's phone number and allegedly called the number to arrange a buy. Thus, it is clear appellant and the Confidential Informant were acquainted prior to the alleged buy on July 31, 2013, and allegedly met face to face. None of the testifying police officers at either the motion hearing or trial saw any exchange or delivery from appellant to the alleged Confidential Informant. There was no showing that disclosure of the Informant's identity would risk his safety or cause retaliation since the facts as testified to by the police witnesses indicated appellant already knew the Confidential Informant's identity. In fact, the police testified an intermediary threatened the Confidential Informant on behalf of appellant, indicating that the Confidential Informant's identity was already known to appellant so that providing contact information or producing the Confidential Informant for a hearing or trial balanced in favor of disclosing the identity of the Confidential Informant, if one actually existed.
Appellant's defense in this matter was that he did not participate in a drug sale on July 31, 2013 and that there was no Confidential Informant who would testify that he purchased crack cocaine from appellant on that date. There was no evidence or any proof of delivery without testimony from the Confidential Informant. Therefore, revelation of the Confidential Informant's identity was crucial in this criminal case against appellant. There was no relevant inquiry made by the Court regarding the relevance and materiality of the Confidential Informant's identity

5

being revealed, considering that without this information appellant was unable to research the Confidential Informant's criminal record, his character, background, whether the events described by the police actually occurred, or whether appellant was, in fact, the person from whom the Confidential Informant allegedly purchased drugs.

Misidentification was an issue raised by appellant, if a buy had actually taken place as the police officers contended in their testimony.

A fact that favored the revelation of the Confidential Informant's identity, in addition to the fact that his identity was material and relevant to appellant's defense - that the Confidential Informant's phone number and person were allegedly already known to appellant - is that in an official report filed on August 5, 2013 with the F.B.I., Detective Leighton stated the following:

> A Confidential Human Source (CHS) who is in a position to testify, responded to a predetermined location to conduct a controlled buy of crack cocaine from Joshua Lynch.

It appears that on August 5, 2013, Detective Leighton, the investigating detective in this case, did not perceive any safety threat to the Confidential Informant, and this report in and of itself should have been persuasive with the Court. The report should have certainly tipped the scales in favor of revealing to appellant the Confidential Informant's identity and information, or, at the very least, the Court should have required the prosecution to produce the Confidential Informant for a hearing.

Rule 573 of the Pennsylvania Rules of Criminal Procedure mandate the disclosure by the Commonwealth of any evidence favorable to the accused, either to guilt or to punishment, and is within the possession or control of the attorney for the Commonwealth. The Court allowed the prosecuting attorney to violate the discovery rule by failing to order the prosecutor to turn over the Confidential Informant's information, denying appellant the opportunity to subpoena the Confidential Informant to court, since the prosecutor failed and refused to produce him at either the suppression motion hearing or trial.

2.      The Court erred in failing to conduct an in-camera [sic] review of the Confidential Informant to determine if a Confidential Informant existed, and if a purchase of cocaine from appellant had been made on July 31, 2013.

If the Court believes that the Commonwealth's privilege should prevail, then special precautions may be necessary in the weighing process, such as an in-camera [sic] hearing to determine whether the informant's testimony would in fact be helpful to the defendant. Com. v. Payne, 540 Pa. 54 (Pa. 1994).

In the interest of justice, such an in-camera [sic] examination should have been conducted.

3.      Since the alleged Confidential Informant was the only witness to the alleged crime, the Court erred in failing to give the missing witness adverse inference instruction requested by appellant prior to and during the trial.

4.      There was no chain of custody as to the drugs presented at trial after the Confidential Informant allegedly gave them to the detective, and there was no lab technician who purportedly tested the drugs who testified as to the lab results and the accuracy of the lab testing devices and the results.

6



5.     The Court should not have allowed evidence of other alleged crimes to be introduced at trial, namely, evading and eluding police, of which appellant was charged in CP-09-CR-0001696-2014. Pennsylvania Rule of Evidence 404(b) entitled "Character Evidence; Crimes or Other Acts" states:

> Evidence of a crime, wrong or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with that character.

The Court should have excluded evidence of the eluding and evading the police crime, denied by appellant, since it had no probative value to the charge of possession and delivery of cocaine, and if there was any probative value it certainly was outweighed by unfair prejudice, confusing the issues, misleading the jury. This evidence of another crime should have been excluded. (Pa.R.E. 403).

6.     The Court erred in failing to suppress the unlawful wiretap, since there was never a consent signed by the Confidential Informant, who was dubbed "Tin Man" by the police, and there was no Court authorized warrant or permission given by either the Court or the District Attorney's Office allowing the wiretap of the alleged phone conversation between the Confidential Informant and the alleged [sic] to be appellant on the other end.

The motion and supporting brief regarding suppression of the cell phone wiretap should have been granted. The failure to grant this suppression motion was an abuse of discretion. Moreover, the recording of the conversation was never produced nor turned over to appellant despite the fact that a recording was allegedly made. Also, the recording, without explanation, was never produced at either the suppression hearing or trial.

7.     The evidence was insufficient to convict appellant of the possession and delivery of crack cocaine since the only evidence produced at trial was from the police officers who claimed they had suspicion that he was selling drugs but [sic] set forth no basis or reason for their suspicions. The police had made appellant a "target" of their investigation based on their unsubstantiated suspicion that appellant was a drug dealer.

The police provided no testimony as to the probable cause it had to believe the alleged Confidential Informant's accusation that appellant was a drug dealer, since there was no evidence of the alleged Confidential Informant's reliability, how many other buys he had arranged, or any other information presented which [sic] would justify this sting operation directed toward appellant. At best, the evidence was entirely circumstantial, with no fingerprints, recording, Confidential Informant, marked money, etc. introduced into evidence, without which [sic] the evidence was insufficient to convict.

8.     It was error for Police Officer Phillips to identify appellant after he was only shown appellant's photo from a J Net System and without a photo array or lineup allowed to identify appellant as the man he observed in the car with the Confidential Informant on July 31, 2013. Other police officers were permitted to testify they knew appellant in the community and/or had prior dealing with him, allowing the jury to infer that appellant had had prior contact with the police, and most probably, arrests and a criminal record, which [sic] criminal arrest and record is prohibited from being introduced into evidence.

7



9.    Ineffective assistance provided by trial counsel, who failed to make objections to the introduction of evidence, and other errors, including:

      a.   allowing testimony regarding other crimes, eluding police, for which appellant was facing charges;

      b.   allowing police witnesses to testify that they knew or were familiar with appellant, allowing the jury to infer appellant had prior arrests and/or a criminal record;

      c.   allowing Detective Leighton to testify as to the lab results showing crack cocaine;

      d.   allowing lab results into evidence without raising a custody/chain of possession issues, with Detective Leighton testifying he did not know who transported the drugs to the Bucks County lab;

      e.   allowing a copy of the lab report to be introduced by a police officer and not the lab technician who performed the test;

      f.   not arguing that there were no fingerprints or DNA showing appellant ever had possession of the drugs;

      g.   allowing testimony that appellant was a target of an investigation, which allowed the jury to infer that the F.B.I. or the police had information that appellant was drug dealing prior to the July 31, 2013 alleged drug transaction;

      h.   not getting the police logs of the officers involved in the July 31, 2013 drug deal as alleged by the officers;

      i.   failing to get the phone logs for appellant's phone;

      j.   failing to introduce any defense evidence, including evidence that defendant did not own an automobile, including a silver Camaro;

      k.   not objecting or filing a motion to suppress Officer Phillips' identification of appellant from a sole photograph of appellant being shown to him and not a photo array;

      l.   allowing testimony of the separate offense of eluding police;

      m.   failing to present any evidence on appellant's behalf including character evidence;

      n.   failing to object to the Court not giving a missing witness instruction;

      o.   failing to object to the consciousness of guilt charge by the Court from which the jury could infer appellant's alleged flight from police, which was prejudicial to appellant;

      p.   failing to follow up with alibi witnesses and have the witnesses testify, including appellant's employer, grandmother and ex-girlfriend;

      q.   failing to present evidence that upon learning that appellant's grandmother was contacted by police regarding an arrest warrant, on August 12, 2013, appellant voluntarily turned himself into police;

      r.   failing to cross-examine the police witnesses as to why they did not make any attempt to arrest appellant immediately following the alleged buy and recover the marked money that the Confidential Informant allegedly gave to appellant in exchange for drugs;

      s.   failing to make proper objections and motions in order to preserve issues for appeal;

8

56

t.   failing to introduce exculpatory evidence and provide any defense for appellant, resulting in his being found guilty for a crime of which appellant is innocent.

## ANALYSIS

As a threshold matter, we note that "the fact [Appellant] filed a timely Pa.R.A.P. 1925(b) statement does not automatically equate with issue preservation." Tucker v. R.M. Tours, 939 A.2d 343, 346 (Pa. Super. 2007). The Superior Court made clear that "Pa.R.A.P. 1925(b) is not satisfied by simply filing any statement. Rather, the statement must be "concise" and coherent as to permit the trial court to understand the specific issues being raised on appeal." Id. When appellants raise an "outrageous" number of issues in a 1925(b) statement, the appellants "have deliberately circumvented the meaning and purpose of Rule 1925(b) and have thereby effectively precluded appellate review of the issues they now seek to raise." Kanter v. Epstein, 866 A.2d 394, 401 (Pa. Super. 2004).

A voluminous 1925(b) statement does "not identify the issues that [Appellant] actually intend[s] to raise on appeal because the briefing limitations contained in Pa.R.A.P. 2116(a) makes the raising of so many issues impossible." A voluminous 1925(b) statement "makes it all but impossible for the trial court to provide a comprehensive analysis of the issues." Tucker, 939 A.2d at 346 (internal citations omitted).

Appellant's Concise Statement covers nine (9) pages. It features nine (9) separate Matters, with the ninth Matter consisting of twenty (20) subsections. Appellant's first Matter extends over three and one half (3 1/2) pages. This Court finds that such a statement can hardly be considered concise, and the "voluminous" nature of the statement impedes this Court's ability to provide a comprehensive analysis of the relevant issues.

## I.    Sufficiency of the Evidence

9

√7

Appellant contends that the evidence presented at trial was not sufficient to sustain the jury's verdict. We demonstrate herein that the Commonwealth presented sufficient evidence to the jury to prove beyond a reasonable doubt that Appellant committed the crimes of which he was convicted.

The Pennsylvania Supreme Court has articulated that the well-settled standard of review in judging the sufficiency of the evidence is whether, when viewing the evidence in a light most favorable to the Commonwealth as the verdict winner and drawing the proper inferences favorable to the Commonwealth, the trier of fact could reasonably have found that all of the elements of the crime were established beyond a reasonable doubt. Commonwealth v. Hagan, 654 A.2d 541, 543 (Pa. 1995); Commonwealth v. Heberling, 678 A.2d 794, 795 (Pa. Super. 1996). The Superior Court has elaborated:

> In applying [the above] test, we may not weigh the evidence and substitute our judgment for that of the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances.
>
> The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

Commonwealth v. Ventrini, 734 A.2d 404, 406-07 (Pa. Super. 1999) (citations omitted).

Clearly, in finding Appellant guilty of Delivery of a Controlled Substance, the jury believed the testimony of the Commonwealth's witnesses and accepted the Commonwealth's evidence to the extent it established beyond a reasonable doubt the elements of the offense. Based on the foregoing facts and in viewing the facts most favorable to the Commonwealth as

10



verdict winner, it is apparent that the Commonwealth presented sufficient evidence to the jury to prove beyond a reasonable doubt that Appellant committed this offense.

A Delivery of a Controlled Substance occurs under the following circumstance:

Except as authorized by this act, the manufacture, delivery, or possession with intent to manufacture or deliver, a controlled substance by a person not registered under this act, or a practitioner not registered or licensed by the appropriate State board, or knowingly creating, delivering or possessing with intent to deliver, a counterfeit controlled substance.

35 Pa.C.S.A. § 780-113(30).

Delivery is specifically defined as "the actual, constructive, or attempted transfer from one person to another of a controlled substance, other drug, device or cosmetic whether or not there is an agency relationship." 35 Pa.C.SA. § 780-102. "Thus, for a defendant to be liable as a principal for the delivery of a controlled substance there must be evidence that he knowingly made an actual, constructive, or attempted transfer of a controlled substance to another person without the legal authority to do so." Commonwealth v. Murphy, 844 A.2d 1228, 1233-34 (2004). A defendant actually transfers drugs when he physically conveys drugs to another person. Id.

The evidence in the light most favorable to the Commonwealth was sufficient to support the jury's finding that a delivery of a controlled substance occurred. Officer Leighton testified that he conducted a thorough search of a Confidential Informant before leaving for a prospective drug buy. Officer Leighton confirmed that he did not find any currency or contraband on the Informant at that time. N.T. 02/04/15, pp. 14-17. Meanwhile, Detective Harold searched the Informant's vehicle and similarly uncovered no currency or contraband. N.T. 02/04/15, pp. 89-90.

The Commonwealth further presented testimony that, after being searched, the Informant met with an individual driving a silver Toyota Camry at an apartment complex to conduct a

11



purchase of narcotics with pre-recorded currency. N.T. 02/04/15, pp. 124-26. After meeting this individual, the Informant furnished Officer Leighton with three (3) bags of crack cocaine. N.T. 02/04/15, pp. 31-32. Upon another extensive search of his person, clothing, and vehicle, no other currency or contraband was found. N.T. 02/04/15, pp. 34-35, 96. During the entire duration of this operation, the Informant was always in view of the Officers and did not meet with any other person. N.T. 02/04/15, pp. 95-96. The foregoing evidence was sufficient to find that the individual in the silver Camry delivered a controlled substance to the Confidential Informant.

The evidence presented was further sufficient to support the jury's finding that Appellant was the individual in the silver Camry. Officer Phillips testified that he could clearly identify Appellant as the driver and sole occupant of the Camry as it entered the parking lot. N.T. 02/04/15, pp. 117-18. After the Camry left the apartment complex, Officer Phillips was able to further identify Appellant as the driver of the Camry as he pulled alongside the vehicle at a nearby red light. N.T. 02/04/15, p. 128. Additionally, Officer O'Brien testified that he was able to make multiple identifications of Appellant. Officer O'Brien observed Appellant operating the Camry and talking on a cell phone as he left the complex and further identified him moments later as Appellant drove by the entrance to a Wawa convenience store where the Officer was present. N.T. 02/04/15, pp. 170-74, 176-77. Lastly, after tracing the registration of the Camry to a Winder Drive address in Bristol, Officers Phillips and Durle observed Appellant driving that same silver Camry at that address. N.T. 02/04/15, pp. 132, 156. Viewed in light most favorable to the Commonwealth, this evidence was sufficient for the jury to find that Appellant was the individual in the silver Camry who delivered controlled substances to the Confidential Informant.

**II.     Denial of Motion to Discover Identity of Confidential Informant**

Under Pa.R.Crim.P. 573, "a trial court has the discretion to require the Commonwealth to reveal the names and addresses of all eyewitnesses, including confidential informants." Commonwealth v. Marsh, 97 A.2d 318, 321 (Pa. 2010). Specifically, Pa.R.Crim.P. 573(b)(2)(a)(i) provides:

> (a) In all court cases, except as otherwise provided in Rule 230 (Disclosure of Testimony Before Investigating Grand Jury), if the defendant files a motion for pretrial discovery, the court may order the Commonwealth to allow the defendant's attorney to inspect and copy or photograph any of the following requested items, upon a showing that they are material to the preparation of the defense, and that the request is reasonable:
> (i) the names and addresses of eyewitnesses....

The Commonwealth enjoys a qualified privilege to withhold the identity of a confidential informant. Marsh, 997 A.2d at 321; See Commonwealth v. Roebuck, 681 A.2d 1279, 1283 (Pa. 1996). To overcome the Commonwealth's privilege, an appellant must make a showing "that the information sought is material to the preparation of the defense and that the request is reasonable." Roebuck, 681 A.2d at 1283. "Only after the defendant shows that the identity of the confidential informant is material to the defense is the trial court required to exercise its discretion to determine whether the information should be revealed by balancing relevant factors, which are initially weighted toward the Commonwealth." Marsh, 997 A.2d at 321-22. The Pennsylvania Supreme Court has provided the following guidance:

> No fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.

Commonwealth v. Carter, 233 A.2d 284, 287 (Pa. 1967) (quoting Roviaro v. United States, 353 U.S. 53, 60–62 (1957)). "Protecting the identity of informants is recognized as a vital public interest because it is necessary to protect the flow of information from informants as well

13

61

as to insure the safety of informants." Commonwealth v. Bonasorte, 486 A.2d 1361, 1372 (Pa. Super. 1984). The Pennsylvania Supreme Court went even further, holding that the safety of a confidential informant is a "controlling factor" in determining whether to disclose an informant's identity. Commonwealth v. Bing, 713 A.2d 56, 58 (Pa. 1998). "If the Commonwealth makes a reasonably specific showing that the informant or that informant's family or friends would be harmed or killed in retaliation for the confidential informant's assistance to the police, the Commonwealth's privilege should prevail." Commonwealth v. Payne, 656 A.2d 77, 81 (Pa. 1994).

Appellant claims that the Confidential Informant's identity is material to his defense, as the Informant was the sole witness of the alleged drug transaction that resulted in his conviction. However, it is important to note that four (4) separate officers provided testimony to Appellant's delivery of the crack cocaine. Officer Leighton and Detective Harold testified to searching the Informant, his clothing, and his vehicle both before and after the transaction. Officers Phillips and O'Brien each identified Appellant as the sole occupant of the vehicle where the illegal transaction was alleged to have occurred. Despite the fact that the Informant was the only witness, other than Appellant, to directly observe any transaction that occurred within the vehicle, there was corroborating testimony provided by four (4) Officers concerning the transaction. Therefore, Appellant's claim that the Confidential Informant's identity is material to his defense is exaggerated.

However, even if the Informant's identity is material to Appellant's defense, this Court's denial of Appellant's request for the identity was a valid exercise of our discretion based on a weighing of several factors. While Appellant does have a right to prepare his defense, this Court found the Informant's safety to be the determinative issue. At Appellant's Suppression Hearing,

14

62

this Court heard testimony from Officer Leighton that the Confidential Informant received a threat from Appellant that was communicated through a third party[3]. As a direct result of this threat, the Informant was concerned for his/her safety. N.T. 05/01/14, pp. 34-35. Given that the Pennsylvania Supreme Court has held that an informant's safety is a "controlling factor" in determining whether disclosure is appropriate, and this Court made a similar determination as a result of the threat received by the Informant, we submit that the denial of Appellant's request for the Informant's identity was a valid exercise of this Court's discretion.

### III. *In Camera* Review

Appellant claims that this Court erred in not conducting an *in camera* review of the Informant. We will address this contention herein.

There is no case law in Pennsylvania mandating that this Court conduct an *in camera* review to aid in the determination of a motion to compel the identity of an informant. Appellant's cited authority for this complaint is Commonwealth v. Payne, supra. However, Payne stands for the proposition that "special precautions may be necessary in this weighing process, such as an *in camera* hearing to determine whether the informant's testimony would in fact be helpful to the defendant." Payne, supra, 656 A.2d at 81 (emphasis added). The Payne Court specifically referenced Commonwealth v. Pritchett, 312 A.2d 434 (Pa. Super. 1973) as supporting authority, yet Pritchett held that "disclosure should be denied or special precautions ordered if the Commonwealth makes an affirmative and convincing showing of exceptional circumstances or compelling reasons." Pritchett, 312 A.2d at 439 (emphasis added). This Court found that the Commonwealth made a convincing showing that the Informant's safety was threatened, and as

---

[3] Appellant makes issue of a report prepared by Officer Leighton indicating that the Informant "is in a position to testify." However, the threat was communicated to the Informant after Officer Leighton completed his report. N.T. 02/03/15, pp. 37-38.

15

63

such, we denied disclosure to Appellant. We submit that this Court was well within our discretion in not ordering an *in camera* review where applicable case law does not require it.

## IV. Missing Witness Instruction

Appellant complains that this Court erred in failed to give a missing witness instruction requested by Appellant at trial. However, a plain reading of the record indicates that Appellant never requested this Court provide such an instruction. Therefore, we submit that this Court did not err in failing to give an instruction that was never requested. Nevertheless, a missing witness instruction would have been inappropriate given the facts of this case and the relevant law.

A missing witness instruction is appropriate when a potential witness is available to only one party to a trial, "and it appears this witness has special information material to the issue, and this person's testimony would not be merely cumulative." Commonwealth v. Manigault, 462 A.2d 239, 241 (Pa. 1983). If that party fails to produce the testimony of that witness at time of trial, "the jury may draw an inference it would have been unfavorable." Id. A trial court may provide for a missing witness instruction against the Commonwealth as follows:

> In order for the "missing witness" adverse inference rule to be invoked against the Commonwealth, the witness must be available only to the Commonwealth and no other exceptions must apply. In order to determine whether a witness was "available" to a party, the trial court must ascertain whether the witness was "peculiarly within the knowledge and reach" of one party.

Commonwealth v. Evans, 664 A.2d 570, 574 (Pa. Super. 1995). "An inference may not be drawn where there exists a satisfactory explanation as to why the party failed to call such witness." Commonwealth v. Jones, 637 A.2d 1001, 1005 (Pa. Super. 1994). A satisfactory explanation exists where the Commonwealth has a genuine concern for a witness' safety. Id.

As discussed above, the record reflects that the Commonwealth presented testimony at Appellant's Suppression Hearing that the Informant received a threat from Appellant through a third party. Such a threat directly caused the Informant to fear for his/her safety. This Court

16

found that the evidence supported the Commonwealth's genuine concern for the Informant's safety, and we submit that the Commonwealth provided a satisfactory explanation such that providing an adverse witness instruction would have been inappropriate.

## V.   Evidentiary Decisions

Appellant raises four (4) separate claims concerning the admission of evidence at trial. We begin our analysis by noting that the Pennsylvania Supreme Court has consistently held that the admission of evidence at trial is addressed to the sound discretion of the trial court, and such evidentiary rulings will not be disturbed absent an abuse of that court's discretion. See Commonwealth v. Champney, 832 A.2d 403, 416 (Pa. 2003); Commonwealth v. Ragan, 645 A.2d 811, 818 (Pa. 1994).

Moreover, a party must make a timely and specific objection in order to preserve an issue for appeal. Commonwealth v. Brown, 701 A.2d 252, 254 (Pa. Super. 1997). "The Superior Court will not consider a claim on appeal which was not called to the trial court's attention at a time when any error committed could have been corrected." Commonwealth v. Montalvo, 641 A.2d 1176, 1184 (Pa. Super. 1994). Appellant's individual claims will be discussed herein.

### 1.   Challenge to the Admission of the Narcotics and Lab Report

Appellant objects to the entry into evidence of the three (3) bags of crack cocaine and the report prepared by the Bucks County Crime Lab. This Court submits that because Appellant did not object to the admissibility of this evidence at trial, Appellant has thereby waived any claims arising there from. However, even if Appellant has preserved his claim, we submit that any such evidence was validly admitted.

Appellant specifically objects to the lack of a chain of custody for the bags of crack cocaine presented at trial. The Superior Court has consistently held:

17

The Commonwealth need not produce every individual who came into contact with an item of evidence, nor must it eliminate every hypothetical possibility of tampering. A complete chain of custody is not required so long as the Commonwealth's evidence, direct and circumstantial, establishes a reasonable inference that the identity and condition of the exhibits have remained the same from the time they were first received until the time of trial. Any gaps in testimony regarding the chain of custody go to the weight to be given the testimony, not to its admissibility.

Commonwealth v. Cugnini, 452 A.2d 1064, 1065 (Pa. Super. 1982).

In the case sub judice, Officer Leighton testified that he received three (3) bags of crack cocaine from the Confidential Informant immediately after the Informant's meeting with the individual identified as Appellant. Officer Leighton further testified that he submitted those bags into Bristol Township Police Evidence for testing. Officer Leighton detailed the procedure by which Bristol Township Police maintains evidence, and identified retired Officer Hairhoger as the evidence custodian. The report prepared by the Bucks County Crime Lab further identified Officer Hairhoger as the individual who submitted the three (3) bags for testing, and confirmed that those bags contained crack cocaine. Through the testimony of Officer Leighton, the Commonwealth established a reasonable inference that the identity and condition of the bags of crack cocaine remained the same from the time that the Informant relinquished them to the Officer until their presentation at trial.

Furthermore, the corresponding lab report was validly admitted into evidence. The Pennsylvania Supreme Court has held that a police crime lab is "firmly rooted in the business record exception to the hearsay rule," and its admission without the corresponding testimony of the forensic analyst who prepared the report does not violate the Confrontation Clause. Commonwealth v. Carter, 932 A.2d 1261 (Pa. 2007). The Court further concluded that "drug tests are basic, routine, and highly reliable. The forensic chemists use standardized, precise

calculations in determining the presence of a controlled substance and in ascertaining its weight, arriving at a final result that leaves little room for error." Id.

Given the above law, the Commonwealth was not required to produce the testimony of the lab technician who authored the report. However, the record does show that this Court inquired of Appellant's counsel if the identity of the lab technician was relevant to Appellant's defense. The relevant portion of the Notes of Testimony is reproduced below:

> MR. GANNON: Your Honor, if I just may for the record, the analyst is listed as Joanne Szpanka, S-Z-P-A-N-K-A, and the date is August 13th of '13.
>
> THE COURT: Are you [, Mr. Busico,] going to cross examine him on that?
> MR. BUSICO: Ms. Szpanka, no.

N.T. 02/04/15, p. 42. As the Commonwealth complied with the relevant case law and Appellant's trial counsel did not seek to cross-examine the Officer concerning the author of the report, we submit that this Court was within our discretion to admit the lab report into evidence.

### 2. Evidence of Other Crimes

Pa.R.E. 404(b)(2) provides that evidence of other crimes is admissible for purposes other than to show propensity, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice."

Regarding evidence of flight in particular, the Pennsylvania Supreme Court has held that "when a person commits a crime, knows that he is wanted therefor [sic], and flees or conceals himself, such conduct is evidence of consciousness of guilt, and may form the basis in connection with other proof from which guilt may be inferred." Commonwealth v. Coyle, 203

19
67

A.2d 782, 789 (Pa. 1964). The Superior Court has explained the basis for admitting evidence of flight as follows:

> The theory for admitting evidence of flight is based upon a premise that the person who flees does so in recognition of his wrongdoing and is seeking to avoid punishment for that conduct. Evidence of the misconduct of a party in connection with the trial is admissible as tending to show that the party guilty of the misconduct is unwilling to rely on the truth of his cause, or is conscious that it is an unjust one.
>
> Commonwealth v. Barnes, 593 A.2d 868, 870 (Pa. Super. 1991) (internal citations omitted).

Evidence of Appellant's flight from police officers is admissible as its probative value is greater than its potential for unfair prejudice against Appellant. Evidence of flight is highly probative of Appellant's consciousness of guilt. In driving over a curb and sidewalk to avoid apprehension after officers had clearly identified themselves and were in the midst of attempting to make an arrest, a jury could reasonably infer that Appellant fled "in recognition of his wrongdoing" and sought to "avoid punishment for that conduct."[4]

Evidence of flight is also probative of Appellant's identity, which is a purpose that Pa.R.E. 404(b) explicitly permits. Appellant's main defense proffered at trial was that of mistaken identity. Multiple officers testified to observing Appellant as the driver and sole occupant of a silver Camry where the drug transaction that forms the basis of Appellant's charges occurred, yet Appellant claims that he was not driving the vehicle. When Appellant fled from police officers on August 2, 2013, multiple officers again observed Appellant driving the same Camry that was involved in the July 31, 2013 drug transaction. As the evidence of Appellant's flight corroborated the fact that Appellant did have access to the silver Camry, it was highly probative of the identity of the person driving the Camry when the crime occurred. The evidence

---

[4] This Court gave a standard jury instruction concerning consciousness of guilt. When presented with the opportunity, Appellant's counsel did not object to this instruction.



was highly probative of both Appellant's consciousness of guilt and the identity of the person who delivered a controlled substance, and this Court therefore submits that it was admissible to the jury.

### 3. Officer Phillips' Identification of Appellant

Appellant complains that this Court erred in permitting Officer Phillips to testify that he was able to identify Appellant after viewing a departmental photo rather than by a photo array or lineup. We submit that because Appellant did not object to this testimony at trial, Appellant has thereby waived any claims arising there from. However, even if Appellant has preserved his claim, we submit that the testimony was validly admitted into evidence.

Pa.R.E. 701 provides that "if a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is (a) rationally based on the witness's perception and (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue." When testifying concerning an out-of-court identification, "any indefiniteness and uncertainty in the identification testimony goes to its weight." Commonwealth v. Orr, 38 A.3d 868, 874 (Pa. Super. 2011).

There is no case law in Pennsylvania that mandates that a police officer in the midst of conducting an investigation must identify a target only after viewing a photo array or lineup. Officer Phillips testified that after viewing the driver of a vehicle suspected of delivering narcotics, he viewed a departmental photograph of the Appellant, who was the target of the investigation, to confirm that the driver and the target were the same person. Officer Phillips concluded that Appellant was the driver of the vehicle that he witnessed. Appellant's trial counsel received an opportunity to cross-examine Officer Phillips concerning his identification of Appellant, and any uncertainty revealed would have gone towards the weight of the evidence. As

21

69

Officer Phillips testified based on his perception and the testimony concerning his investigation was helpful to the jury, this Court submits that the Officer's testimony was admissible evidence.

### 4. Officer O'Brien's Prior Knowledge of Appellant

Appellant objects to any references by police officers to having prior knowledge of Appellant. This Court submits that because Appellant did not object to any testimony at trial concerning an officer's prior familiarity with him, Appellant has thereby waived any claims arising there from. However, even if Appellant has preserved his claim, we submit that any such testimony was validly admitted as evidence.

The Pennsylvania Supreme Court has established that "if a testimonial reference . . . indicates to the jury the accused has been involved in prior criminal activity, reversible error has been committed. This is not to say, however, that all references which may indicate prior criminal activity warrant reversal." Commonwealth v. Nichols, 400 A.2d 1281, 1282 (Pa. 1979) (internal citations omitted). To warrant reversal, "the record must illustrate that prejudice results from the reference. Prejudice results where the testimony conveys to the jury, either expressly or by reasonable implication, the fact of a prior criminal offense." Id.; See Commonwealth v. Riggins, 386 A.2d 520 (Pa. 1978). In a case where a witness referenced a defendant having prior "contact with the police," the Pennsylvania Supreme Court specifically held:

> . . . the "statement regarding "contact with the police" focused only on prior contact with the police and did not reasonably imply prior criminal conduct. The prior contact with the police could have occurred under a variety of circumstances that were not criminal in nature including involvement in a motor vehicle accident or violation, as a witness to a crime, or as a victim of a crime.

Commonwealth v. Young, 849 A.2d 1152, 1156 (Pa. 2004).

Appellant submits that Officer O'Brien's testimony that he was "familiar with Mr. Lynch in [his] interaction with the community" was prejudicial in that it inferred that Appellant had

22

70

criminal arrests or some sort of criminal record. However, Officer O'Brien's specific testimony does not expressly or by reasonable implication convey the existence of any criminal history to the jury. His reference to prior familiarity with Appellant, as in Young, could refer to various circumstances unrelated to a prior criminal record. Therefore, no prejudice was done to Appellant, and Officer O'Brien's statement was admissible testimony.

Additionally, Officer O'Brien's testimony was probative of Appellant's identity, as his prior knowledge aids in his identification of Appellant as the individual driving the silver Camry used in the drug transaction. Therefore, his testimony was relevant and validly submitted to the jury.

## VI. Denial of Motion to Suppress

Appellant argues that this Court erred in failing to grant Appellant's Motion to Suppress the recording of an alleged conversation between Appellant and the Confidential Informant. This contention will be discussed below.

It is well established that Pennsylvania Courts will not decide moot questions. In re Gross, 382 A.2d 116, 119 (Pa. 1978). "Generally, a case will be dismissed as moot if there exists no actual case or controversy." Mistich v. Com., Pa. Bd. of Prob. & Parole, 863 A.2d 116, 119 (Pa. Commw. Ct. 2004). The existence of a case or controversy requires:

> (1) a legal controversy that is real and not hypothetical, (2) a legal controversy that affects an individual in a concrete manner so as to provide the factual predicate for a reasoned adjudication, and (3) a legal controversy with sufficiently adverse parties so as to sharpen the issues for judicial resolution.

Id. "A legal question can become moot on appeal as a result of an intervening change in the facts of the case." Id. An appellate court will only decide an otherwise moot case "when the case presents an issue capable of repetition yet evading review, or an issue of great public importance." Fitzpatrick v. Fitzpatrick, 811 A.2d 1043, 1045 (Pa. Super. 2002).

23

Appellant challenges this Court's denial of Appellant's Motion to Suppress an alleged recording of a conversation between Appellant and a Confidential Informant. However, the Commonwealth did not introduce evidence of an audio recording at trial, nor did it reference the existence of such a recording in any way. As such, Appellant's complaint is moot, as the evidence at issue did not have any impact the verdict. Therefore, as this Court's ruling on Appellant's pre-trial motion did not affect Appellant in a concrete manner as required by law, we submit that the issue is moot and inappropriate for appellate review.

Appellant further complains that this recording was never turned over to defense counsel at or before time of trial. Even if Appellant did not receive a copy of the recording, we note that its existence was disclosed to Appellant at the Suppression Hearing. Appellant, therefore, had access to the recording and could have requested the Commonwealth to furnish a copy at any time. If Appellant believed the recording could provide evidence favorable to his defense, Appellant could have introduced it himself at trial. We submit that Appellant's failure to request a copy of the recording was a voluntary strategic decision and does not present a meritorious issue on appeal.

## VII. Ineffective Assistance of Counsel

Appellant further claims that his trial counsel was ineffective, citing twenty (20) alleged deficiencies in his representation. We will discuss this contention below.

As a general rule, The Pennsylvania Supreme Court has held that "a petitioner should wait to raise claims of ineffective assistance of trial counsel until collateral review. Thus, any ineffectiveness claim will be waived only after a petitioner has had the opportunity to raise that claim on collateral review and has failed to avail himself of that opportunity." Commonwealth v. Grant, 813 A.2d 726, 738 (Pa. 2002); See Commonwealth v. Liston, 977 A.2d 1089, 1094 (Pa.

24

2009). The Supreme Court further held that absent certain narrow circumstances, "claims of ineffective assistance of counsel are to be deferred to PCRA review; trial courts should not entertain claims of ineffectiveness upon post-verdict motions; and such claims should not be reviewed upon direct appeal." Commonwealth v. Holmes, 79 A.3d 562, 576 (Pa. 2013). An exception to the general rule exists when such claims have been raised and fully developed by hearings at the trial court level. See Commonwealth v. Bomar, 826 A.2d 831, 853-54 (Pa. 2003).

In the case sub judice, Appellant raises twenty (20) separate claims of ineffective assistance of trial counsel on direct appeal. The general rule established by the Pennsylvania Supreme Court prevents this Court from addressing Appellant's claims at this level. Moreover, these claims do not fall into the exception to the general rule, as Appellant's contentions have not been fully developed through a hearing or by any other process. Therefore, we submit that Appellant's claims of ineffective assistance of counsel are premature and better suited for post-conviction review, in accordance with established case law.[5]

## CONCLUSION

For the foregoing reasons, this Court perceives that the issues of which Appellant has complained in this appeal are without merit, and that this Court's March 4, 2015 Judgment of Sentence was supported by both the law and the record in this case. We respectfully request the Superior Court affirm this Court's decision.

BY THE COURT:

June 30, 2015
Date

WALLACE H. BATEMAN, JR., J.

---

[5] Appellant has since filed an uncounseled Post-Conviction Relief Act Petition on June 22, 2015.

25

73